Second case of the day, Hess v. Kanoski & Associates. Just give me a moment to get out. Mr. Hess. Good morning. May it please the court. This case is here for a second time. I'm sure the court is aware it was here before in Hess 1, which was decided in February of 2012. This case, in summary, involves an employment agreement between myself and the law firm Kanoski & Associates and the two claims that were sent back, remanded to the district court by this court, are the count for breach of contract and the violation of the Illinois Wage Payment and Collection Act. When this court sent the case back, it ordered that it wanted extrinsic evidence as to the meaning of the words or phrase, when fees are generated, in order to come to the ultimate conclusion as to whether or not the firm owed the employee bonuses based upon a number of cases that had been worked on by the employee for years prior to his termination. And unfortunately, when the case was sent back, there was another motion for summary judgment raised, not on an extrinsic evidence basis, but on a number of points that are not contained within the mandate of this court in Hess 1. Mr. Hess, what extrinsic evidence about the meaning of the critical terms is now in the record? What is in the record, Your Honor, is evidence that the employee performed all of the work on the 170... That's not extrinsic evidence about the meaning of the terms in the contract. What extrinsic evidence about the meaning of the contractual terms is now in the record? I think, Your Honor, with all respect, when the employee performs... Could you answer my question? Yes, sir. You might later tell me, perhaps, why I shouldn't have asked the question. Yes, Your Honor.  Well, there's probably no extrinsic evidence in the contract. All right. Well, isn't that a problem? The panel in 2012 says this issue could be illuminated by extrinsic evidence about the meaning of these terms in the contract. Yes, sir. And we go back on remand, and you offer no such evidence. That's true. Well, isn't that a problem? Well, it's a problem that the defense created. The defense, if they wanted to... Sorry, you're the plaintiff. The plaintiff has the burden of persuasion. But the correct issue of when the fees were generated, based upon extrinsic evidence, was not raised by the defense in their motion for summary judgment. That's why the plaintiff, in response to the summary judgment, didn't bring up the extrinsic evidence. It should have been brought up at that time. But any attorney that is trying to defend a motion for summary judgment is hesitant to bring up anything that's not in response to the opponent's summary judgment motion. But having said that, Your Honor, the evidence... Does that mean they conceded it? No, it never came up. If there were a word search... I guess that's what I'm saying. Yes. If they didn't bring it up, was it conceded? It was not brought up, Your Honor, so it couldn't be conceded. It should have been addressed. And then we would have the answer that this court in HES 1 wanted of what does generate it mean under the contract, and even more importantly, under the Illinois Wage Payment and Collection Act. And on the factual side, there's no dispute that the employee did all of the work on the 170 breast implant claims. They were all submitted, waiting for a check eight months before the termination. Similarly, not identical, but there's evidence in the record that the employee performed years of work on the other five cases, non-breast implant cases. Both sets resulted in significant funds, revenue, if you will, to the law firm. The law firm then took the position after the firing, you can't be paid the bonuses because of the current argument is Section 8, subsection D4. The problem with that is that provision, as defense reads it, the employer reads it, is in violation of the Wage Act. The Wage Act is clear that once, and the cases that are cited in our brief, once the employee performs what is required to be entitled to the bonus, those actions, and in this case, it's 100 percent of the work to generate the fee on the breast implant cases, and it's a large majority of the work on the non-breast implant cases. But the Wage Act provides that once the employee, and we've cited the cases, Camillo, Golden Bear, Kooten, and also one of the regulations, that all clearly indicate that an employer cannot try to avoid paying a terminated employee compensation that's been earned to include a bonus with a provision that says if you're no longer here at the time the bonus is paid, you're not entitled to it. That's Section 115.5 of the Illinois Wage Payment and Collection Act, which prohibits any illegal forfeiture. The whole purpose and policy, we cited the cases, as to the public policy in the state of Illinois, and even this court in the Harrell opinion had ruled that the purpose of the act is to make sure employees aren't stiffed by their employers. And when an employee does that, similar to what the act provides, the other Camillo says, when the employer does that work, they are to be paid for work that accrues in a recovery for the employer. So what we have is the employee performing 100% of the work. Even according to the position taken by the employer, both in the prior case and currently, that work results in a requirement under the Wage Act. The statute has to be upheld. An illegal forfeiture provision in the contract, which is what Section 8 is, 8D4, that cannot stand because the law cannot enforce an illegal provision which the law prohibits, and the Wage Act prohibits that. So on the one side, as we've argued in our brief, the employee is entitled to 100% of the bonus on the amount recovered in the breast implant cases. And then as to the other five cases, we argue, as occurred in Camillo and the cases cited in our brief, the employee, even though he's terminated early, is entitled to a pro rata share of what had been agreed to as to a bonus on that revenue. Counsel, could I, for a minute, can I go back? When you started, you indicated that you're not in the same summary judgment issue that we sent back? You're not in the same case? There was a new summary judgment? No, Your Honor, we're in the same case. The case was sent back two counts, and then the employer filed a motion for summary judgment after a small amount of discovery and argued what is in their brief, essentially five arguments as to why the summary judgment this time was appropriate. No, it's exactly the same case. Nothing has changed as to the claim, the facts, and so forth. Did I answer your question, Your Honor? Well, no. There was a summary judgment that was filed that came up on appeal. The first time, yes, sir. First time.  And that was the whole case. We sent it back. It was sustained as to all counts, but these two counts, and then sent back on remand. Right. But then there was a second summary judgment motion. Yes, sir. So what are we reviewing? Is it the second summary judgment or what we sent back? Well, I think we should be reviewing what this court wanted reviewed, which is the extrinsic evidence of what generated means. The extrinsic evidence here, as we've talked about, is the employee's done 100 percent of the work. Now, the argument has been made by the defense that it was waived. It was never raised before. That's true. But from our perspective, the important thing is to try to get back where this court was in February of 2012 to find and incorporate and comply with the extrinsic evidence that's in the cases we've talked about so that this court, at least at this time, can make the determination that it tried to make last time and instructed what needed to be done on remand. What happened with this summary judgment this time is the court,  in the sense that had the motion been, here's the extrinsic evidence, Your Honor, as to the meaning of when fees are generated, that would have been appropriate and that could have been argued on both sides. But it wasn't, and it created a problem. The plaintiff was concerned raising an issue that's not raised in the motion, but it certainly needed to be raised, and had it been raised, we would have had the district court's decision as to what the fees generated meant according to the extrinsic evidence. And anything else besides that in the motion for summary judgment is outside the mandate, and we shouldn't waste this court's time, let alone the district court's time. I see I'm into my other time. Thank you, Your Honor. Thank you, Mr. Hurst. Mr. Septon. Thank you, Your Honor. Good morning. May it please the court. Your Honor, this case involved a motion for summary judgment after a remand from this court, in which Justice Wood specifically stated in her opinion that we remand for the district court. Opinions speak for the court, counsel. I'm sorry? Opinions speak for the court, not for the author. The court said that the district court is to interpret the contract and consider Mr. Hess's arguments. The court, this court, did not say that the case was to go back only to decide the meaning of a singular word in a contract, nor could it because that would be contrary to principles of contract interpretation. Contracts must be read as a whole with meaning and effect given to language in the entire agreement, and the language has to be read consistently with one another and in harmony if possible. And where there's a more specific provision in a contract and a general provision, the more specific provision controls. The issue here is whether Mr. Hess is entitled to receive a bonus in the form of a percentage of fees that were earned after he was terminated from the law firm. The district court held that he is not, and the district court was correct for four reasons. The first reason is that Mr. Hess's employment contract. Counsel, I need to ask you a factual question. What's the name of your client? Konosky and Associates. Why did the district court say his name was Konosky Brezny? Konosky Brezny is the successor firm. Todd Brezny. Yes, so I want to know what is the name of your client, the current name of the defendant? To answer that question, I would say that the firm is now known as Konosky Brezny. It was Konosky Associates at the time that Mr. Hess filed the lawsuit. Yes, but it's current names that matter. Has it changed since Konosky Brezny? It has not. I suggest you file an amended certificate of interest describing who the current litigant is. I will do that, Your Honor. Section 8D.4 of the contract specifically states that the employee acknowledges where the corporation retains clients upon employee's termination that employee has no proprietary interest in fees to be earned since the employee is to be fully compensated through his salary and or bonus for all work done while an employee of the corporation. That provision is specific. That provision controls. That provision establishes that in order to be entitled to a percentage of a fee as a bonus, that that fee has to be earned during employment. It is undisputed in this case that all fees that are claimed by Mr. Hess were not earned during his employment. They came in months and even years after. Earned? I suppose we get back to what does earned mean? You did all the work. Was it earned when you finished the work? Well, the dictionary definition, Your Honor, is to obtain or to have received. That's what earned means in the dictionary. The other thing that we can look to here is the contingency fee contracts themselves under which Mr. Hess worked. Those contingency fee contracts specifically stated that Kanofsky and Associates could only receive payment of a fee on cases on subs obtained by settlement, arbitration, or litigation. In other words, no fee can even exist until Kanofsky and Associates obtains a recovery for their client. No recovery was obtained for any client in this particular matter, which Mr. Hess seeks, until after Mr. Hess was terminated. And under the contract, he is prohibited from recovering a share of that fee as a bonus. Mr. Hess has argued to this court that the word generated should be construed in a vacuum. It cannot be. And the fact that Section 4 of the contract and later a letter agreement said that he's entitled to fees generated doesn't mean, and this court didn't mean when it remanded the case, that you don't look to the contract as a whole and you don't interpret all the provisions together and you don't look at the most specific provision, which is 8D4, which I just read, and you're not prohibited then from holding that that provision controls, and it does control in this case. This court has said in Lawrence v. Hacker, dictionary definitions cannot be taken out of context and read in isolation to change the intent of the parties as expressed in the contract itself. I would submit that that is exactly what Mr. Hess is doing in this case by arguing to you that we're supposed to just look at the word generated and nothing else in the contract. There was an argument regarding extrinsic evidence, and there were some questions from the panel regarding extrinsic evidence. Mr. Hess correctly noted he did not present any extrinsic evidence on remand. Our argument on remand is that when you properly interpret the contract as a whole, that that agreement is unambiguous, and that agreement clearly does not entitle Mr. Hess to a share of a fee that was earned post-termination. But we also did present extrinsic evidence in the event that the court would find the contract ambiguous, and that evidence was undisputed. Mr. Konoski testified at his deposition that in the context of the contract, he believed that the word generated meant to receive a fee. Let me go back, and apparently I'm not understanding this very well. The first appeal came up on a motion for summary judgment, which was granted, right? The motion for summary judgment was granted, yes. And we sent it back saying we need more information with regard to extrinsic evidence with regard to that particular case. I believe this court sent it back to interpret the contract. I don't believe the court held that the contract was ambiguous. I believe what the court held is that the word generated. But it had to do with that motion for summary judgment. It did. Once it went back, that issue was apparently set aside, and you filed a new motion for summary judgment. We took discovery first, and then we filed a second motion for summary judgment. So, in effect, what's on appeal now is not what we sent back, but the new motion for summary judgment. I respectfully disagree with that. I think what is on appeal now is exactly what was sent back. It's the question of the interpretation of the contract. There was discovery taken. Well, but what we said should be done wasn't done. Again, I disagree. I think what was done, what was asked to be done or directed to be done by this court is what was done. The argument on the second motion for summary judgment was, what does this contract as a whole mean? That argument was never before this court the first time it was up on the motion. Certainly it was. That's what the district court decided. We decided in 2012 that this was potentially to be informed by extrinsic evidence. It goes back to the district court for the consideration of extrinsic evidence, and nobody offers any. So we come back on the same record as we had before with the same questions. Although, why nobody offered any extrinsic evidence? Maybe there's just none. But presumably our panel in 2012 was responding to arguments by the parties that there was extrinsic evidence which needed to be put into the record. Well, with all due respect, Your Honor, in the first appeal what the court held is it entertained an argument regarding collateral estoppel and it entertained an argument regarding an admission that Mr. Hess had made in his deposition, and the court concluded that that admission was not as broad as argued by the parties. However, what the court sent the case back for was an interpretation of the contract, and that's exactly what we briefed on summary judgment the second time, and it's exactly what was argued to the court the second time. And there was extrinsic evidence admitted and produced by my client, simply not by Mr. Hess. No. What a statement, I believe, acts is not extrinsic evidence. In the law of contracts, extrinsic evidence, parole evidence, reflects statements made by the parties to each other when they are negotiating the contract. It might include normal terms of trade, or so an expert on trade usage might be used. But it is utterly irrelevant what any party subjectively believed and did not communicate to the other party. It's worthless. I agree with it. You're correct. So we have a record that contains no evidence of trade usage or normal understandings in the trade, and no evidence about what either party said to the other or wrote to the other at the time. Is that a fair statement? That is a fair statement. And it's also, I believe, a correct conclusion that this contract is unambiguous. This court did not prohibit the district court on remand from concluding, as it properly did, that this contract is unambiguous when you construe the agreement as a whole, when you apply the rules of contract interpretation. In fact, in its prior opinion, this court noted that in light of the fact that the parties have not briefed this question before our court, we remand for the district court to interpret the contract and consider the merits of Hess's theories under counts one and four. The court did not go back and say, we conclude that this is an ambiguous contract, that you have to take extrinsic evidence, and that you have to then decide the issue solely in that vacuum. That's not what this court's mandate was. With respect to Mr. Hess's interpretation, I would submit that he being entitled to a percentage of a summary judgment Well, let me back up. Why was a new motion for summary judgment required then? Because the court had to look at the contract as a whole and interpret it. Section 8D.4 was never raised and never argued in the first appeal. It was not a basis for the motion for summary judgment. The entire contract was not considered, nor was an interpretation of the entire contract offered on the first motion for summary judgment. That was done after the case went back, and it is at that point that we argued Section 8D.4 is a more specific provision. It specifically covers the situation where an employee is terminated, the client stays with the firm, and what the right of the lawyer is to a proprietary interest in a fee, and what the clause says is that the employee has no proprietary interest in a fee that is to be earned at the time of his termination. And that was the basis for the district court's decision in granting the motion for summary judgment for Kanofsky and Associates. Well, I guess simply stated, you didn't win on your motion for summary judgment the first time, so you filed a second one. But a different motion. Right. A very different motion and on a very different record. Mr. Kanofsky's deposition was taken. There was evidence. So none of the issues of what we remanded are before the court? I believe the issue that was remanded was for interpretation of the contract as a whole, and that was done for the first time on remand before the district judge. And we said extrinsic evidence would help be helpful. I don't think the court needs to resort to extrinsic evidence because I believe the contract is unambiguous when properly considered as a whole. And when the specific provision is looked at, and I believe it controls over the general provision. But if extrinsic evidence is to be submitted, it is Mr. Hess's burden to submit that extrinsic evidence to show that the contract means something other than it says if the court concludes that it is ambiguous. I believe it is not, and I believe the district court correctly concluded that the contract is, in fact, unambiguous. And we also made an argument to the district court that was never made the first time this case was before this court, that to adopt Mr. Hess's argument would be to violate public policy and would be to violate the professional rules of conduct as fee splitting between non-lawyers. So what we decided in the first case, when we remanded it, is just set aside. That matter is in limbo. I mean, it's dead, and we're on another new issue on a second motion for summary judgment. That's correct. And what we said with regard to extrinsic evidence in the first case does not apply. I think that if the court had concluded on remand that the contract was ambiguous, it could have gone to extrinsic evidence. Mr. Hess didn't submit any, so I don't know where it would have gone. But the court didn't need to go there is the point. The court didn't need to go there after looking at all the language in the contract and holding that there's a specific provision in that contract that was never argued the first time this case was on appeal that prevents Mr. Hess from recovering a fee post-termination. And for him to recover a fee, incidentally, post-termination, would require a fee splitting between lawyers not in the same firm without consent of the client. And we argued in the district court that that would be an illegal interpretation of the contract and would violate public policy and would violate the Illinois rules of professional conduct. Unless we determine, we're still talking about generated, is that ambiguous, right? The word generated has to be construed with the remainder of the contract. It has to be construed in context. Dictionary definitions can't be taken in isolation. The word generated is not ambiguous when construed with the remainder of the terms of the contract when read together in their entirety as a whole show that there is no entitlement to a fee post-termination. I see that my time is up. We would ask that the court affirm. Unless there's any other questions, thank you very much. Okay, thank you, Mr. Simpson. Mr. Hess. Thank you. Just a few points in response. Section 8D-4, as I mentioned before, according to the Illinois Wage Payment and Collection Act, is an illegal forfeiture provision. It's the same as what happened in Camillo and Golden Bear and so forth. The employer can't hold out a bonus, promise a bonus, then provide a bonus for five or six years on all these cases. There are cases out there that were resolved and the bonus was paid before the termination. But they can't let that employee perform what he's required to do to earn the bonus daily, weekly, monthly, as the employee does with wages and other compensation promised by the employer, and then pull the rug out from underneath the employee before an artificial date or, in this case, a real date of when the money is actually received from the defendant in these cases or the settlement facility as to the breast implant cases. So the defense argument that 8D-4 controls here, it does not. What controls here is the Illinois Wage Payment and Compensation Act. Counsel also made reference to, as I heard his argument, it was something to the effect that the court focused on just this provision of when fees are generated. Looking in the same paragraph in the opinion in House 1, the court specifically said the language of the contract is not clear because the contract does not define when fees are generated. It's logical to conclude that this court looked at the entire contract besides the other documents, the briefs, and was aware of what Section 8D-4 provided. 8D-4, from our perspective, makes it clear that, on the one hand, the employee can't get a share of the fees per the first part of that sentence, but the employee is to be paid for all work and bonuses for all the work done while the employee was still an employee. In conclusion, then, Your Honors, the Illinois Wage Payment and Compensation Act has to be complied with, and this provision in the contract that says, otherwise, according to the defense, cannot stand. Mr. Estes, let me ask you one factual question, if I might. On the matters that you feel you generated during the course of your employment, what was the billing procedure of the firm? In other words, I understand what a fee is received in the office, but did the firm send out monthly statements for the work you sent out? You mean monthly payments? Yes. No, sir. It would be 30 days after the money, the recovery, and the case was closed. It always had to be a bill that never went to the individual until recovery was had? A payment. A payment. A payment was not made to the employee. And I think that's a significant point. If the court wants to look at fee splitting, and the brief addresses it's not a fee splitting because the money first goes into the trust account, and then the money goes into the firm's account and becomes revenue. It's now a bonus. It's no longer a fee. Thank you. Thank you. Thanks to all counsel. The case is taken under advisement, and the court will proceed to the third case, the United States v.